IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| AMERICAN STATE BANK AND TRUST COMPANY OF WILLISTON, <br><br> Plaintiff, <br><br> vs. <br><br><br><br> ROY J. ANDERSON, TIFFANI ANDERSON JAMES ANDERSON, and John Does 1-4, <br><br> Defendants. | CV 10-154-BLG-RFC <br><br><br><br> **ORDER GRANTING PARTIAL SUMMARY JUDGMENT** |
| ROY J. ANDERSON, and <br> TIFFANI ANDERSON, husband and wife, <br><br> Counter Defendants, <br><br> vs. <br><br> UNITED STATE OF AMERICA, <br> UNITED STATES DEPARTMENT OF <br> AGRICULTURE, FARM SERVICE <br> AGENCY, RICHLAND COUNTY, <br> MONTANA, and PATRICK TURNER, <br><br> Third Party Defendants. | |

Plaintiff American State Bank & Trust Company of Williston has moved for summary judgment on Count One of Plaintiff's Complaint. Andersons have

not responded to the motion for summary judgment and have not requested an extension of time for filing a response.[1]

## BACKGROUND FACTS

American State Bank & Trust Company of Williston (American State Bank herein) has had a lending relationship with Roy Anderson and Tiffani Anderson for many years. Many of the loans over the years were guaranteed by the Farm Service Agency ("FSA"), and its predecessor.

At issue in this case are two loans from American State Bank to the Andersons: Loan No. 7229-46 and Loan No. 7229-56. The FSA issued to the bank a 95% loan guarantee on the two loans. The guaranteed loan program for farm loans is authorized under 7 U.S.C. § 1929(h). Regulations to implement the guaranteed loan program are authorized under 7 U.S.C. 1989(a). A number of federal regulations exist to define the relationship between the Bank and the FSA for these types of federally-guaranteed loans. See 7 C.F.R. § 762.

Andersons do not dispute that they entered into the two loan agreements and do not dispute that they have no made payments due in accordance with the

---

[1]Pursuant to L.R. 7.1(d)(1)(B): "Any party that opposes a motion must file a response brief. Responses to motions to dismiss, for judgment on the pleadings, or for summary judgment must be filed within twenty-one (21) days after the motion was filed. . . failure to file a response brief may be deemed an admission that the motion is well-taken." More than sufficient time has passed for Andersons to respond. Even if Andersons had responded, the motion for summary judgment would be granted for the reasons set forth herein.

language of the agreements. Pursuant to the terms of the agreement, American State Bank has declared both loans in default and has accelerated the amount due.

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57. Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.

## ANALYSIS

### I. Foreclosure.

In order to make a prima facie case for foreclosure, the lender must only show: (1) a debt of the borrowers; (2) nonpayment of the debt; and (3) present ownership of the debt by the lender. *Northwest Farm Credit Serv. v. Lund*, 255 Mont. 114, 120, 841 P.2d 490, 494 (1992).

Andersons have not filed a response to the Motion for Partial Summary Judgment in which they challenge the validity of the Loan Agreements or Security Agreements and they admit that they have not made the payments owed. Andersons also do not dispute American State Bank owns the debt. If there is default, the documents allow American State Bank to accelerate the notes and foreclose on the security agreements. The only real dispute at this point is whether

Andersons were legally justified in discontinuing payments because American State Bank failed to offer loan servicing options.

## II. Andersons' Defense Fails as a Matter of Law.

Andersons' defense is that their loans became "distressed loans" as defined by the Agricultural Credit Act of 1987. Andersons allege that because their loans were distressed, American State Bank was obligated, prior to foreclosure, to explore restructuring options, including rescheduling, reamortization, deferral, debt write-down, or internet assistance. Andersons allege that American State Bank failed to "explore restructuring options," and because of that failure, Andersons are not in default.

The guaranteed loan program provides lenders with a guarantee of up to 95% of the loss of principal and interest on a loan. The intent of the program is permit lenders to make agricultural credit available to farmers who do not meet the lender's normal underwriting criteria.

The regulations governing this program are set forth at 7 C.F.R. § 762. The regulations govern the guarantee relationship between the lender and the FSA, and require the lender to service the loan appropriately so as not to negligently put taxpayer money at risk. Under the regulations, the guarantee cannot be enforced

against the FSA by the lender if the loss is a result of the lender's negligent servicing.

Upon default of a guaranteed loan, the regulations require the lender to report the default to the FSA. The lender is then to arrange a meeting with the borrower within 45 days to develop a course of action that will eliminate the delinquency. Either the lender or the borrower may request an FSA representative to attend a meeting to assist in developing solutions. The lender must decide whether the restructure of liquidate the account within 90 days of default. A lender "may" include, with the concurrence of the FSA, any curative actions described in the regulations. The loan "may" be reamortized, rescheduled, or written down, by the lender, with the concurrence of the FSA. If liquidation becomes imminent, the lender will "consider" the borrower for interest assistance. 7 C.F.R. § 762.143(b)(3)(v).

Andersons' argue that American State Bank failed in its obligation to attempt curative action on the loans. However, the guarantee agreements and federal regulations simply did not obligate American State Bank to do so. Interest assistance was explored, but Andersons were not eligible for any interest assistance.

Andersons have not demonstrated that American State Bank failed to comply with the regulations. Also significant is that Andersons cannot rely on the regulations to oppose foreclosure proceedings. A borrower has no implied private right of action to enforce the Agricultural Credit Act of 1987. *Reilly v. Phillips*, 105 B.R. 59, 62 (D. Mont. 1989); *Harper v. Federal Land Bank of Spokane*, 878 F.2d 1172, 1177 (9th Cir. 1989). Violations of the federal regulations can impact whether a bank can enforce the guarantee against the FSA, but it does not create any person rights to the borrower. "Although the lender may behave in a manner that affects its right to demand payment under the guarantee agreement, that conduct will not influence the lender's rights and duties with respect to the borrower." *Parker v. United States Dept. of Agriculture*, 879 F.2d 1362, 1365 (6th Cir. 1989). The regulations are for the benefit of the FSA, not the borrowers. *Id*. at 1366.

## CONCLUSION

Therefore, based upon the foregoing, Plaintiff's Motion for Partial Summary Judgment is **GRANTED**. The following specific relief is awarded:

1. American State Bank is entitled to immediate possession of the collateral under the Security Agreements with the right to enter the Fort Peck Indian Reservation and Defendants' land for the

purpose of locating, marshaling, recovering, and removing the collateral therefore and all other purposes incident thereto. American State Bank is authorized to sell the collateral, by public or private sale, as authorized by the Uniform Commercial Code and other applicable law;

2. Appropriate law enforcement agencies are authorized and directed to assist in the recovery of the collateral; and

3. American State Bank is granted a money judgment against Andersons, jointly and severally, in the amount of $602,478.11, and a deficiency judgment should the sale of the collateral not be sufficient to satisfy the money judgment, all with interest thereon from and after entry of judgment until the same is paid in full.

DATED this 15th day of December, 2011.

*/s/ Richard F. Cebull*_____
RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE